IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY PARKS,             *

      Plaintiff,           *

v.                  *      Civil Action No. GLR-21-1532

MID-ATLANTIC TERMINAL, LLC,  *
et al.,
                     *

      Defendants.

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Mid-Atlantic Terminal, LLC,[1] Steve O'Malley, and Rhonda Hughes' Motion to Dismiss (ECF No. 6). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motion in part and deny the Motion in part.

## I.   BACKGROUND

### A.   Factual Background[2]

Self-represented Plaintiff Anthony Parks began working for Defendant Mid-Atlantic Terminal, LLC ("Mid-Atlantic") on February 20, 2018. (Misc. EEOC Documents

---

[1] In the Complaint, Plaintiff Anthony Parks incorrectly names Mid-Atlantic Terminal, LLC, as "Mid Atlantic Terminal." The Court will direct the Clerk to correct the party's name on the docket.

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 3) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

["EEOC File"] at 16, ECF No. 3-1).[3] In January 2019, a co-worker named Cliff Gross began to subject Parks to verbal harassment, including referring to him as a "Mother Fucker, Snitch, Jamaican Nigger and Uncle Tom." (Am. Compl. at 7, ECF No. 3). Gross also threatened to knock Parks out and get Parks fired. (Id.). Parks promptly notified Defendant Steve O'Malley, the General Manager at the Mid-Atlantic location where Parks and Gross worked, of the harassment. (Id.). Although O'Malley said he spoke to Gross about his racist behavior, it "continued for months." (Id.). Parks made several additional complaints over this time to O'Malley and Operations Manager Matt Stahl. (Id.). They "did nothing" in response. (Id.).

On August 22, 2019, Gross repeated his racist slur toward Parks over the Mid-Atlantic radio system. (Id.). In response, O'Malley informed Parks that he would "send Cliff Gross a letter" and report the matter to the union. (Id.). Parks does not know if this occurred. (Id.). On September 4, 2019, Gross wrongly reported Parks for an alleged safety violation over the radio system. (Id.). This accusation formed part of a pattern of false reports against Parks by Gross and Stahl "in an attempt to create a file against" Parks. (Id.). Parks responded to the comment by asking over the radio system why Gross was "constantly harassing [him]." (Id.). In response, O'Malley called Parks into a meeting, told him that Gross had not harassed him, and sent Parks home for the day. (Id.). During a meeting to discuss the incident the following day, O'Malley told Parks that he "thought this situation was over" and suggested Parks "must be having problems at [his] home."

---

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

(Id.). O'Malley then explained that, per Defendant Rhonda Hughes, Human Resources ("HR") Manager, Parks was "being transitioned out of [his] job and not fired." (Id.). O'Malley said Mid-Atlantic would give Parks six weeks of pay "as this was the company practice when things are not working out." (Id.). Although the Complaint is not entirely clear on this point, it appears Parks refused to accept Mid-Atlantic's severance offer and continued working for the company.

On September 11, 2019, Parks reported these incidents of harassment and his meeting with O'Malley via a letter to HR Specialist Scott Feingold. (EEOC File at 5–7). It is unclear if or how Feingold responded, although Parks describes being engaged in a "back and forth email conversation with" Feingold months later. (Am. Compl. at 8). In any event, Parks filed charges of retaliation and discrimination based on race and national origin with the Equal Employment Opportunity Commission ("EEOC") on October 21, 2019. (EEOC File at 16–17).

In April 2020, Mid-Atlantic laid Parks off "on the basis of the COVID 19 pandemic." (Am. Compl. at 8). The Complaint is once again unclear on this point, but the "layoff" that occurred in April 2020 appears to have contemplated the possibility of a rehiring on some later date. Mid-Atlantic terminated Parks along with a woman named Rebecca, whom Mid-Atlantic had hired in January 2020. (Id.). Mid-Atlantic stated that as Parks and Rebecca were the last two employees it hired, they were the first to be laid off. (Id.). On July 7, 2020, Parks was discharged. (EEOC File at 12). Feingold informed Parks that his "position was being made redundant." (Am. Compl. at 8). When Parks objected, Feingold asked to speak with him via phone. (Id.). Parks refused, asking that they instead

communicate in writing. (Id.). Feingold responded that Parks' refusal to speak via phone meant that Parks "had resigned [his] position and all offers were off." (Id.). Further, notwithstanding Mid-Atlantic's "last in first out" policy, Mid-Atlantic recalled Rebecca to work in July 2020, but did not recall Parks. (Id.).

Parks also identifies certain inconsistencies in Mid-Atlantic's representations to the EEOC. For instance, Hughes told the EEOC that Parks had never made a report to O'Malley or Mid-Atlantic before September 2019, but elsewhere referenced a suggestion O'Malley made to Parks about Gross that occurred months before September 2019. (Id.). Parks notes that Gross remains employed by Mid-Atlantic. (Id.).

## B.   **Procedural History**

Parks filed charges of retaliation and discrimination based on race and national origin with the EEOC on October 21, 2019. (EEOC File at 16–17). The EEOC identified this as Charge No. 531-2019-03689 and sent Parks notice of his right to sue on February 2, 2021. (Id. at 18). On March 23, 2021, Parks filed an additional charge with the EEOC alleging retaliation and discrimination based on race, sex, and national origin. (Id. at 12–13). The EEOC identified this as Charge No. 531-2021-01240 and sent Parks notice of his right to sue on March 30, 2021. (Id. at 14).

Parks filed this lawsuit against Defendants on June 21, 2021, (ECF No. 1), then filed an Amended Complaint on August 6, 2021, (ECF No. 3). Parks' pro se Amended Complaint is not a model of clarity, but appears to allege unlawful retaliation and discrimination on the basis of race, color, and national origin in violation of Title VII of

the Civil Rights Act, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII"). (Am. Compl. at 5). Parks

seeks monetary compensation and punitive damages. (<u>Id.</u> at 9).

Defendants filed the instant Motion to Dismiss on September 28, 2021. (ECF No.

6). On October 27, 2021, Parks filed an Opposition (ECF No. 11), and on November 9,

2021, Defendants filed a Reply (ECF No. 12).

## II.   <u>DISCUSSION</u>

### A.   <u>Standard of Review</u>

Defendants move to dismiss the Amended Complaint under Federal Rules of Civil

Procedure 12(b)(5) and 12(b)(6). The Court will outline each standard in turn.

### 1.   **Rule 12(b)(5)**

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss

for insufficient service of process. If service is contested, the "plaintiff bears the burden of

establishing the validity . . . pursuant to Rule 4." <u>O'Meara v. Waters</u>, 464 F.Supp.2d 474,

476 (D.Md. 2006). "Generally, when service of process gives the defendant actual notice

of the pending action, the courts may construe Rule 4 liberally to effectuate service and

uphold the jurisdiction of the court." <u>Clark v. AT&T Corp.</u>, No. DKC-13-2278, 2014 WL

1493350, at *2 (D.Md. Apr. 15, 2014) (quoting <u>O'Meara</u>, 464 F.Supp.2d at 478). "The

'plain requirements for the means of effecting service of process,' however, 'may not be

ignored.'" <u>Id.</u> (quoting <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087,

1089 (4th Cir. 1984)).

### 2.   **Rule 12(b)(6)**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint,"

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.**    <u>**Analysis**</u>

Defendants make three arguments in their Motion: (1) Parks' Title VII claims against O'Malley and Hughes fail as a matter of law; (2) Parks' claims based upon Charge No. 531-2019-03689 are time-barred; and (3) Parks' discrimination and retaliation claims fail as a matter of law (Mem. P&A Supp. Defs.' Mot. Dismiss ["Mot."] at 4, 6, 7, ECF No. 6-1). The Court will consider each argument in turn.

**1.    Individual Defendants**

Defendants first argue that the Amended Complaint fails to state a claim against O'Malley and Hughes because Title VII does not confer liability on individuals. Defendants are correct. See <u>Brooks v. Arthur</u>, 626 F.3d 194, 203 (4th Cir. 2010) ("Title VII 'foreclose[s] individual liability.'" (quoting <u>Lissau v. S. Food Serv. Inc.</u>, 159 F.3d 177, 180 (4th Cir. 1998))). Accordingly, the Court will dismiss Parks' claims against O'Malley and Hughes.

**2.    Timeliness**

Defendants next argue that the claims Parks detailed in Charge No. 531-2019-03689, filed on October 21, 2019, are untimely and must therefore be dismissed. The Court agrees. The EEOC sent Parks notice of his right to sue regarding Charge No. 531-2019-03689 on February 2, 2021. (EEOC File at 18). The notice informed Parks that he had ninety days within which to file suit. (<u>Id.</u>); <u>see</u> 42 U.S.C. § 2000e-5(f)(1). This ninety-day period is strictly construed. See <u>Harvey v. City of New Bern Police Dep't</u>, 813 F.2d 652, 654 (4th Cir. 1987) (affirming dismissal on timeliness grounds in suit filed ninety-one days after plaintiff's wife received the right-to-sue notice); <u>Clark v. Saval</u>, No. DLB-19-3519,

2020 WL 7640819, at *8 (D.Md. Dec. 23, 2020) ("[Plaintiff] was required to file suit in this Court by December 9, 2019, but he did not do so until December 10, 2019, the ninety-first day. His complaint was untimely."). This is true even in cases filed by self-represented plaintiffs. See Moulden v. Tangherlini, No. RDB-14-3506, 2015 WL 8757609, at *2 (D.Md. Dec. 15, 2015) ("Despite Plaintiff's pro se status, the law is clear that the ninety-day filing requirement must be strictly construed in employment discrimination cases." (quoting Shelton v. Atl. Bingo Supply Co., No. DKC-11-0952, 2011 WL 4985277, at *2 (D.Md. Oct. 17, 2011))).

Parks filed this lawsuit on June 21, 2021, 139 days after receiving notice of his right to sue. (See ECF No. 1). Parks has not argued in his Opposition or elsewhere that he is entitled to equitable tolling. "The fact that a plaintiff is self-represented is not an independent ground for equitable tolling, since a plaintiff does not need an attorney to file a lawsuit in federal court." Deabreu v. United Parcel Serv., Inc., No. TDC-18-1433, 2018 WL 6329316, at *5 (D.Md. Dec. 3, 2018) (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, (1984)), appeal dismissed, No. 19-1249, 2019 WL 8370867 (4th Cir. May 23, 2019). Accordingly, the allegations forming the basis for Parks' October 21, 2019 EEOC Charge—including that Mid-Atlantic failed to adequately investigate or respond to his reports of harassment and that Mid-Atlantic pressured him to resign in response to those reports—are time-barred and must be dismissed.

### 3.    Substantive Deficiencies

Parks' second EEOC Charge, which includes his allegation that he was not recalled to work in July 2020 after being laid off, appears to be timely filed. Defendants argue these

claims fail as a matter of law. At bottom, the Court disagrees and will allow Parks' claims relating to his termination[4] to proceed.

Parks filed his second EEOC Charge on March 23, 2021. (EEOC File at 12–13). In deferral states like Maryland, plaintiffs have 300 days from an allegedly unlawful employment practice within which they may timely file a charge of discrimination with the EEOC. See Angelini v. Balt. Police Dep't, 464 F.Supp.3d 756, 777 (D.Md. 2020). Thus, Parks "may proceed and recover only on deliberate discrimination that occurred within the 300 days of filing his charge." Perkins v. Int'l Paper Co., 936 F.3d 196, 207 (4th Cir. 2019). Accordingly, Parks may premise his claim on adverse actions that occurred on or after May 27, 2020.

Parks' remaining claims may be split neatly into two parts: discrimination and retaliation. The Court will address each part in turn.

### a.    Discrimination Claims

Parks alleges in the Amended Complaint that he was discriminated against on the basis of his race, color, and national origin in violation of Title VII. (See Am. Compl. at 4–5). As an initial matter, the Court notes that neither of Parks' EEOC Charges allege that Defendants discriminated against him on the basis of his color. (See EEOC File at 12–13,

---

[4] The Court notes that Parks checked "[f]ailure to hire me," rather than "[t]ermination of my employment," as the discriminatory conduct to which Defendants subjected him. (Am. Compl. at 5). Liberally construing the Amended Complaint, this box-checking appears to be due to an uncertainty in how to conceptualize the multiple steps culminating in Parks' termination—Mid-Atlantic's initial decision to lay Parks off followed by its subsequent decision not to recall him to work. In the Court's view, this describes a termination, not a failure to hire, and the Court will analyze the claims accordingly.

16–17). Accordingly, the Court will dismiss Parks' claim of color-based discrimination. See Ashe v. Giant of Md., L.L.C., No. AW-06-1293, 2007 WL 7020451, at *3 (D.Md. July 17, 2007) ("To successfully seek judicial relief, a plaintiff must first exhaust his administrative remedies as to each claim of discrimination under Title VII." (emphasis added)), aff'd, 321 F.App'x 316 (4th Cir. 2009); see also Jones v. Calvert Grp., 551 F.3d 297, 301 (4th Cir. 2009) ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex.").

The Court thus turns to Parks' claims of race and national origin discrimination. A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)). The claims in Parks' second EEOC Charge do not include direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate his claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a discrimination claim under the McDonnell Douglas burden-shifting framework, Parks must eventually put forth a prima facie case of discrimination by

establishing that "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations . . . ; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination." Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The fourth element can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

Defendants argue Parks' claim must fail because he has not alleged that he was performing to Mid-Atlantic's expectations and because he has failed to identify a similarly-situated comparator. But a Title VII plaintiff need not articulate a prima facie case to survive a motion to dismiss. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002) ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). "Moreover, the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" Swierkiewicz, 534 U.S. at 512 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir.

11

2020) (quoting <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010)), <u>cert.</u> <u>denied</u>, 141 S.Ct. 1376 (2021).

The Court is also mindful that it must construe self-represented actions liberally. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>see</u> <u>Spencer v. Earley</u>, 278 F.App'x 254, 259– 60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972))). Here, all indications within the Amended Complaint are that Parks' issues at Mid-Atlantic were entirely unrelated to his performance. Thus, Parks' failure to make a <u>pro forma</u> allegation that he was meeting his employer's expectations is not fatal to his claims at the pleading stage, particularly given the absence of any indication that his performance was unsatisfactory.

As to Defendants' second argument, Parks has identified a comparator: Rebecca. According to the Amended Complaint, despite hiring Rebecca, a white woman, after Parks, it recalled her to work in July 2020 while informing Parks that his job was made redundant. (Am. Compl. at 8). As to whether Rebecca is similarly situated to Parks, such "questions are inherently fact-based and should not be resolved at the pleadings stage where [Plaintiff] has alleged enough facts to permit a plausible inference that" Mid-Atlantic's decision was rooted in Parks' race or national origin. <u>Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.</u>, No. TDC-18-3821, 2019 WL 2929025, at *15 (D.Md. July 8, 2019); <u>see also</u> <u>Mandell v. Cnty. of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003) (holding that "the question whether two employees are similarly situated is a question of fact for the jury"); <u>Subasic</u>

v. Sharon Reg'l Health Sys., No. 2:15-CV-1477, 2016 WL 861122, at *3 (W.D.Pa. Mar. 7, 2016) ("Whether or not the [employees outside Plaintiff's protected class] were working in another department or division . . . , or whether that is even relevant to the inquiry, raises factual questions as to whether they are, in fact, similarly situated, which cannot be resolved at the motion to dismiss stage.").

Finally, Defendants assert that "the Amended Complaint fails to set forth any factual allegations supporting an inference of discrimination." (Mot. at 9). The Court disagrees. While Parks' claim may not rest on adverse actions taken prior to May 2020, the Court may review the "totality of circumstances" in determining whether Parks has adequately alleged discriminatory intent. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [Plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [Plaintiff] was fired, at least in part, because of his [protected status]."). Here, the Court is mindful of Parks' allegations recounting Defendants' history of failing to investigate or remedy the discriminatory harassment Parks reported and, indeed, of responding to those reports by pressuring Parks to resign. In context, Mid-Atlantic's decision not to recall Parks after laying him off states a claim for discrimination that rises

"above a speculative level." Coleman, 626 F.3d at 190. Accordingly, the Court will deny Defendants' Motion to Dismiss Parks' claims of race and national origin discrimination.

### b.    Retaliation Claims

Parks also alleges that he was the victim of unlawful retaliation. To state a claim for retaliation under Title VII, a plaintiff must allege "(1) that she engaged in a protected activity," as well as "(2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005)). Mid-Atlantic argues that Parks' retaliation claim is deficient because Parks fails to allege that he engaged in protected activity and because he fails to allege a causal connection between that protected activity and an adverse employment action. At bottom, the Court disagrees and declines to dismiss Parks' retaliation claim.

Defendants' position that Parks failed to include allegations of protected activity in the Amended Complaint is farcical. Parks engaged in archetypal protected activity when he complained about Gross's harassment—which included the use of a racial slur—and Hughes' and O'Malley's failure to investigate and curtail that harassment. See Strothers v. City of Laurel, 895 F.3d 317, 328 (4th Cir. 2018) (finding that protected activity under Title VII includes "complaining to superiors about suspected violations of Title VII" (quoting Boyer-Liberto, 786 F.3d at 281)).[5] Of course, Parks suffered an adverse

---

[5] Indeed, Parks even attached written evidence of one such report, a letter he wrote to HR in which he expressly recounted a coworker demeaning him on the basis of his race

employment action when Mid-Atlantic laid him off and then did not recall him. Thus, Parks need only plausibly allege a causal connection between the protected activity and the adverse actions he experienced.

Plaintiffs in Title VII cases frequently base their prima facie case of causation on temporal proximity. "[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" Jenkins v. Gaylord Ent. Co., 840 F.Supp.2d 873, 881 (D.Md. 2012) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). Here, the ten-month gap between Parks' September 2019 protected reports and Mid-Atlantic's July 2020 decision not to recall him would generally be too great an interregnum to infer a causal connection between the protected activity and the adverse action. See Pascual v. Lowe's Home Ctrs., Inc., 193 F.App'x 229, 233 (4th Cir. 2006). However, as set forth above, Parks has alleged that Mid-Atlantic engaged in a series of actions in the immediate aftermath of his protected activity that suggest retaliatory animus. The Fourth Circuit has held that evidence of retaliatory animus following a plaintiff's protected activity can show causation even where the temporal gap between the protected activity and the adverse action is substantial. See Lettieri v. Equant Inc., 478 F.3d 640, 651 (4th Cir. 2007). The Court thus finds that Parks' allegations are sufficient at the

---

and national origin. (See EEOC File at 5–7). To gloss over these allegations and represent to the Court that the Amended Complaint contained only "naked assertion[s] that Plaintiff complained of 'harassment,'" (Mot. at 10), borders on unprofessional.

pleading stage to plausibly state a claim of Title VII retaliation for which relief may be granted. Accordingly, Parks' retaliation claim survives Defendants' Motion to Dismiss.

### 4.    Service

Finally, Defendants argue that the Amended Complaint must be dismissed pursuant to Rule 12(b)(5) because Parks failed to properly serve Defendants. Because Parks' claims against Hughes and O'Malley are subject to dismissal regardless of service, see supra Section II.B.1, the Court will only analyze this argument with respect to Mid-Atlantic. At bottom, the Court finds that although service was technically deficient, dismissal is not warranted.

Under Federal Rule of Civil Procedure 4(h)(1), a corporation, partnership, or association within a federal judicial district may be served:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant[.]

Rule 4(e)(1) allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Under Maryland law, service on a limited liability company like Mid-Atlantic is generally made "by serving its resident agent." Md. Rule 2-124(h). "If the limited liability company has no resident agent or if a good faith attempt to serve the resident agent has failed, service may be made upon any member or other person expressly or impliedly authorized to receive service of process." Id. Service may also be made "by

16

mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.'" <u>Id.</u> 2-121(a)(3).

Here, Parks has not filed proof of service as to any Defendant. Defendants seek dismissal of the action based on Parks' insufficient service of process. (Mot. at 11–13). Defendants assert that Parks "served his Amended Complaint upon Scott Feingold, who is not employed by Mid-Atlantic." (<u>Id.</u> at 12). Defendants further assert that Parks "sent Defendants Mid-Atlantic (to Mr. Feingold), Mr. O'Malley, and Ms. Hughes, a copy of the summons and Amended Complaint by Federal Express." (<u>Id.</u>). Defendants further note that Parks' Federal Express deliveries failed to include copies of the original Complaint and all other papers filed in the case, as required by Rule 2-121(a)(3). (<u>Id.</u>).

The Court notes that Defendants clearly had notice of this action, as they filed the instant Motion. But "[a]ctual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff." <u>Scott v. Md. State Dep't of Labor</u>, 673 F.App'x 299, 305 (4th Cir. 2016); <u>see also</u> <u>Dring v. Faust</u>, No. WDQ-12-2344, 2013 WL 657638, at *2 (D.Md. Feb. 21, 2013) ("When a defendant has actual notice of the action, 'the rules . . . are entitled to a liberal construction. . . . But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.'" (quoting <u>Armco</u>, 733 F.2d at 1089)). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." <u>Dring</u>, 2013 WL 657638, at *2 (quoting <u>Koehler v. Dodwell</u>, 152 F.3d 304, 306 (4th Cir. 1998)).

"Where the validity of service is challenged, a plaintiff bears the burden of establishing its validity." Quarles v. Wells Fargo Bank, N.A., No. GJH-20-3200, 2022 WL 952025, at *4 (D.Md. Mar. 30, 2022). Parks has not responded substantively to Defendants' service of process argument. The facts provided by Defendants, however, are sufficient for the Court to address the issue.

Both the Fourth Circuit and this Court have found that when faced with technical noncompliance with service of process rules, the Court may permit a plaintiff to cure the deficiencies in service. See Vorhees v. Fischer & Krecke, 697 F.2d 574, 576 (4th Cir. 1983) ("If the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service." (quoting Bailey v. Boilermakers Local 667 of Int'l Broth., 480 F.Supp. 274, 278 (N.D.W.Va. 1979))); Miller v. Balt. City Bd. of Sch. Comm'rs, 833 F.Supp.2d 513, 516 (D.Md. 2011) ("[I]nsufficient service of process does not necessarily warrant dismissal."). Indeed, this Court has previously permitted self-represented plaintiffs who specifically failed to comply with Rule 2-121(a)(3) by mistakenly serving defendants via Federal Express to cure that deficiency rather than dismissing the case. See, e.g., Stovall v. H&S Bakery, No. TDC-20-3234, 2021 WL 2580746, at *3 (D.Md. June 23, 2021); Varieur v. BIS Glob., No. PX-16-3111, 2017 WL 1133708, at *4 (D.Md. Mar. 27, 2017). Further, "[t]he fact that [Plaintiff] is self-represented also weighs against dismissal." Stovall, 2021 WL 2580746, at *3. The Court thus finds that dismissing the Amended Complaint on the

basis of insufficient service of process would be an unduly harsh penalty for a technical mistake by a self-represented plaintiff.

Accordingly, the Court will deny Defendants' Motion to Dismiss to the extent it is premised on insufficient service of process. The Court will instead provide Parks an opportunity to serve Mid-Atlantic in compliance with the applicable rules. The Court will direct Mid-Atlantic to advise the Court whether it will waive service of process or require Parks to proceed with formal service of process.

### 5.    Request for Jury Trial

Finally, the Court notes that Parks has filed a demand for a jury trial. (ECF No. 13). Under Federal Rule of Civil Procedure 38(b)(1), a party may demand a jury trial by "serving the other parties with a written demand—which may be included in a pleading— no later than 14 days after the last pleading directed to the issue is served." Here, because Mid-Atlantic has not yet filed an answer, Parks' demand is timely. Even if Parks' demand were untimely, the Court retains the discretion to "order a jury trial on any issue for which a jury might have been demanded." Fed.R.Civ.P. 39(b). The Court has "broad discretion to grant or deny a motion under Rule 39(b)," and its decision is entitled to deference in the absence of exceptional circumstances. Macsherry v. Sparrows Point, LLC, 973 F.3d 212, 229 (4th Cir. 2020). Given Parks' early request and the absence of prejudice to Mid-Atlantic, the Court would exercise that discretion here. Accordingly, the Court will grant Parks' request.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Motion to Dismiss (ECF No. 6). A separate Order follows.

Entered this 1st day of June, 2022.


_____/s/_____

George L. Russell, III
United States District Judge
